800 So.2d 783 (2001)
Sylvia GOINS
v.
WAL-MART STORES, INC. and James Banks.
No. 2001-CC-1136.
Supreme Court of Louisiana.
November 28, 2001.
*785 Thomas P. Anzelmo, Sr., Geoffrey J. Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, Counsel for Applicant.
James E. Vinturella, Lewis & Caplan, New Orleans, Counsel for Respondent.
KIMBALL, J.[*]
In this case, Quiana Brown, a minor, was allegedly abducted from the parking lot of a Wal-Mart store, driven to a remote location and raped, and later returned to the same Wal-Mart parking lot. Her mother, Sylvia Goins, filed suit on her behalf. She claimed that Wal-Mart was negligent because, among other things, its security guards failed to take reasonable steps to prevent the alleged abduction. Wal-Mart moved for summary judgment, which was denied by both lower courts. Wal-Mart appealed. For the following reasons, we conclude that Wal-Mart showed an absence of factual support for the breach element of Ms. Goins' negligence action, and Ms. Goins failed to respond with factual support sufficient to establish that she would be able to prove the breach element at trial, thereby entitling Wal-Mart to summary judgment. Therefore, we reverse the lower courts' judgments and grant Wal-Mart's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY
The depositions of Sergeant Errol Louis Schultz, Jr. and Lieutenant Frank Baiamonte establish the facts of this case as follows. Sgt. Schultz and Lt. Baiamonte are deputies of the St. Bernard Parish Sheriffs Office. In August of 1994, they were working paid details at the Wal-Mart store on West Judge Perez Drive in Chalmette, Louisiana. The details called for two fully-uniformed deputies to be on duty at a time, one inside near the service desk and one outside. The deputies could communicate by radio and they worked in tandem; if one needed to go inside, the other would go outside and vice-versa. The deputies would investigate anything *786 they observed that was out of the ordinary.
Lt. Baiamonte, the outside deputy, was tasked with being visible and patrolling as much as possible in his marked car. He would make passes through each parking lot aisle, along the side of the store, and behind the store. During his patrol, the longest he would have been out of visibility of the front parking lot was about five minutes while he patrolled the back and side of the store. During that time, however, the inside deputy could see out into the parking lot because the front of the store is all glass.
On August 12, 1994, Sgt. Schultz was assigned to the inside of the store from 3:00 p.m. until the store closed at midnight, and Lt. Baiamonte was assigned to the outside of the store from 5:00 p.m. until midnight. When Lt. Baiamonte arrived for his 5:00 p.m. detail, Sgt. Schultz walked out to the parking lot to talk to him. Shortly thereafter, they noticed three black males near a van and a car that were located at the far, street-side end of the Wal-Mart parking lot. It was sometime between 5:00 p.m. and 5:30 p.m and still daylight when the deputies noticed the men. Because of some recent car thefts and break-ins in the area, the deputies decided to check the men out. They drove over to the men in Lt. Baiamonte's marked police car. The trunk and hood of the men's car were open, and the side sliding door of the van was open. There were car parts all over, including a box with a starter in it.
The deputies asked the men who they were, why they were there, what exactly they were doing, and who the car and the van belonged to. Two of the men explained that the starter had gone out, but that they were changing it and should be finished in a few minutes. The deputies asked the men for identification and the men complied. Sgt. Schultz ran a National Crime Information Center ("NCIC") computer check on the men's names in front of them, such that the men were close enough to be aware of the check. The dispatcher retrieved the names and informed Sgt. Schultz that there were no attachments or arrest warrants on any of the men. Lt. Baiamonte testified that they knew the men had previously been arrested because their names were in the computer, but that they had no reason at that time to inquire why the men had been arrested. In all, the check took less than five minutes. Sgt. Schultz testified that once they get a person's name and address as they did in this case, he will usually leave quickly if he is up to no good.
While Sgt. Schultz ran the NCIC check, Lt. Baiamonte observed the vehicles and the movements of the men. He was able to see inside both vehicles and looked for weapons but saw none. One of the deputies also asked the men if they had any weapons.
The deputies concluded that the men were not bothering anyone and were not doing anything wrong. They "observed nothing ... that should cause any alarm whatsoever." They felt that the men were very friendly, cooperative, and level-headed, and that their story about repairing the vehicle was legitimate. They found that the men did not raise any suspicion, and that the men were not engaged in any activity that caused them to believe that there was criminal activity afoot.
Lt. Baiamonte testified that they did not conduct a pat-down search because there was no need. The deputies told the men to finish what they were doing and then leave. They warned the men that they would be on the premises all night.
After speaking to the men, Lt. Baiamonte drove Sgt. Schultz back to the front *787 of the store, and Lt. Baiamonte resumed his patrol of the parking lot. Lt. Baiamonte testified that no one suggested to him that day that they had observed any type of activity that might have been perceived to be an abduction outside of the store. Neither Sgt. Schultz nor Lt. Baiamonte learned of the alleged kidnapping of Quiana Brown until after midnight, when their superior officer notified them.
Regarding the alleged kidnapping, the deposition of Quiana Brown establishes the following. On August 12, 1994, Quiana Brown went alone to the Wal-Mart store patrolled by Sgt. Schultz and Lt. Baiamonte. She traveled by bus and exited at the bus stop that is located on West Judge Perez Drive, directly in front of Wal-Mart. She did her shopping and then left Wal-mart to return to the bus stop. When she had almost reached the end of the parking lot, she noticed three men fixing a car. One man was under the car and another was walking toward the nearby Burger King restaurant. The men spoke to her, but she did not speak to them. When she reached the bus stop, she realized that it was around 6:00 p.m., and that the next bus was not due for another forty-five minutes. She therefore decided to return to Wal-Mart to make an additional purchase. She walked back across the road and onto the Wal-Mart parking lot. The men again spoke to her and she told them to leave her alone. One man was walking behind her and telling her to take his phone number, but she testified that she did not think that she took it at that time. When she ignored him, the man responded with an obscenity and then returned to where he had been. She did not report the incident to anyone inside the store because the men only tried to talk with her, not grab her. When she exited the store the second time, the car was fixed and the men were in it. When she was about forty feet away from the entrance, the car pulled up to her and the man in the passenger seat apologized for his earlier rudeness. He again asked her to take his phone number, which she did in the hope that he would then leave her alone. She testified that she thought the men drove around the parking lot, and then drove up to her a second time. The man in the passenger seat got out of the car with a gun and told her to get in the car. She testified, "He wasn't dragging me in the car. It looks to where as if like my mom was to pick me up and sayyou know, like my ride. Like my ride or whatever. It didn't look obvious or whatever." She got in the car and the men drove to New Orleans where they raped her and then returned her to the Wal-Mart parking lot later that night. She testified that she did not remember seeing any uniformed police officers at Wal-Mart that day.
Following the alleged attack, Quiana Brown's mother, Sylvia Goins, filed suit on Miss Brown's behalf. Ms. Goins claimed that Wal-Mart was negligent in that, among other things, its security guards failed to take reasonable steps to prevent the alleged abduction. Wal-Mart filed a motion for summary judgment, which the trial court denied. Wal-Mart then sought supervisory review by the fourth circuit. The fourth circuit granted writs but denied relief. It found that genuine issues of material fact remain because it was unclear what amount or type of evidence is necessary under the new rule of Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762 to entitle a business owner to summary judgment in a situation such as that found in the instant case. We granted certiorari to consider whether summary judgment was properly denied in this case. Goins v. Wal-Mart Stores, Inc., 01-CC-1136 (La.6/15/01), 793 So.2d 205.

*788 LAW AND DISCUSSION
Appellate courts review summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-2865, p. 3 (La.5/18/99), 736 So.2d 812, 814. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The procedure is favored in Louisiana and shall be construed to accomplish these ends. Id. Summary judgment shall be rendered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The movant, here Wal-Mart, has the burden of proof. La. C.C.P. art. 966(C)(2). However, because Wal-Mart will not bear the burden of proof at trial, its burden does not require it to negate all essential elements of Ms. Goins' action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to Ms. Goins' action. Id. If Wal-Mart meets this initial burden of proof, the burden shifts to Ms. Goins to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden at trial. Id. If Ms. Goins fails to meet this burden, there is no genuine issue of material fact, and Wal-Mart is entitled to summary judgment. La. C.C.P. art. 966.
Therefore, to carry its burden on summary judgment, Wal-Mart must show that there is an absence of factual support for any of the elements of the negligence cause of action. This negligence case is resolved by employing a duty-risk analysis, which involves five elements: (1) that the defendant's conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) that the defendant's conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) that the plaintiff suffered actual damages (the damages element). Perkins v. Entergy Corp., 00-1372, p. 7 (La.3/23/01), 782 So.2d 606, 611.
Wal-Mart contends that Ms. Goins will be unable to prove either that it had a duty to provide security guards in its parking lot or that it breached any duty it might have had. Because we conclude that there is an absence of factual support for the breach element, we need not discuss factual support for the other elements of the negligence action.[1]
It is undisputed that Wal-Mart employed two off-duty deputies of the St. Bernard Parish Sheriff's Department to work paid security details. Ms. Goins contends that the deputies were unreasonable in failing to perform a pat-down search on the three men and in failing to continually observe the men after learning that they had previously been arrested, thereby breaching their duty of care.
Law enforcement officers are held to choosing a course of action that is reasonable under the circumstances. Hardy v. Bowie, 98-2821, p. 12, (La.9/8/99), 744 So.2d 606, 614. Their authority must at all times be exercised in a reasonable fashion, and they must act as reasonably prudent men under the circumstances. Id. *789 They must also act with due regard for the safety of all citizens who will be affected by their actions. Id.
Contrary to Ms. Goins' contention that the deputies were unreasonable in not conducting a pat-down search of the men, the deputies actually may have been unreasonable to conduct a pat-down search of the men. Both the United States and Louisiana Constitutions prohibit unreasonable searches. See U.S. Const. amend. IV; La. Const. art. 1 § 5. As a general rule, a warrantless search is per se unreasonable. State v. Strickland, 94-0025, p. 19 (La.11/1/96), 683 So.2d 218, 228. However, a warrantless search may be justified by a specific exception to the warrant requirement, such as the investigatory stop-and-frisk procedure. State v. Moreno, 619 So.2d 62, 65 (La.1993) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under this procedure, an officer may stop a person in a public place if he reasonably suspects that the person is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1(A). Once an officer has stopped a person pursuant to art. 215.1(A), he may frisk the outer clothing of the person for a dangerous weapon if the officer reasonably suspects that he is in danger. La.C.Cr.P. art. 215.1(B). Therefore, if the officer does not reasonably suspect that he is in danger, he may not frisk or pat down the person. Nevertheless, the officer may engage the person in conversation. State v. Duplessis, 391 So.2d 1116, 1117 (La.1980). "[T]he police do have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." Id.
In the instant case, the deputies engaged the men in conversation and the men voluntarily participated. However, whether a frisk would have been reasonable is determined by an objective standard. State v. Dumas, 00-0862, p. 2 (La.5/4/01), 786 So.2d 80, 81. The relevant question is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. p. 3-4, 786 So.2d at 81-82 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968)). The encounter occurred during daylight hours in a parking lot of what Lt. Baiamonte described as a "[v]ery low crime area." The deputies testified that there were car parts all over, the car's hood was open, and the men truly seemed to be repairing a vehicle. No weapons were visible. Their manner was not nervous or hostile, but instead friendly and cooperative. The men had previous arrests, but no warrants or attachments. As Sgt. Schultz testified, even if the men did have criminal intentions, it would be highly unusual for them to act on their intentions once the deputies knew their identities. In sum, as Lt. Baiamonte testified, the deputies "observed nothing ... that should cause any alarm whatsoever." Given these circumstances, a reasonably prudent man would not be warranted in the belief that his safety or that of others was in danger. Therefore, the deputies had no grounds to conduct a pat-down search of the men, and their decision not to conduct a pat-down search cannot be said to have been unreasonable.
Ms. Goins also contends that the deputies were unreasonable in that they did not continue to observe the men after learning that the men had previously been arrested. Once the deputies determined that the men did not pose a danger to the Wal-Mart patrons, they instructed the men to finish their repairs and leave, and they informed the men that they would be on the premises all night long. The deputies then resumed their patrols, turning their attention to the rest of the premises. *790 Under the circumstances described above, the deputies' determination that the men were not a danger to the Wal-Mart patrons was reasonable. Having dispatched with the situation for the moment, the next sensible action was to seek out potential problems in the remainder of the large premises. Indeed, it might have been unreasonable for the deputies to ignore the remainder of the premises in order to continue to observe men who they had already concluded did not pose a threat.
Having concluded that the deputies' actions were not unreasonable, we find that there is an absence of factual support for the breach element, which is essential to Ms. Goins' negligence action. The burden then shifts to Ms. Goins to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden at trial. La. C.C.P. art. 966(C)(2). Ms. Goins argues that a reasonable juror may find that the deputies should have conducted a careful pat-down search. She also argues that a reasonable juror may find that, after learning that the men had previously been arrested, common sense dictates that Lt. Baiamonte should have closely monitored the three men, remained in their presence until their car was repaired, and then escorted them off the premises. For the reasons stated above, we disagree that a reasonable juror could so find. We conclude that Ms. Goins has failed to meet her burden of proof, there is therefore no genuine issue of material fact, and Wal-Mart is entitled to summary judgment.

DECREE
For the foregoing reasons, we reverse the judgments of the trial court and court of appeal. Wal-Mart's motion for summary judgment is granted, and the case against Wal-Mart is dismissed with prejudice.
REVERSED: SUMMARY JUDGMENT GRANTED.
JOHNSON, J., concurs.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] We do not find that Wal-Mart assumed a duty to provide security guards in its parking lot. Rather, we simply suppose for the sake of argument that Wal-Mart owed this duty under the facts because it is clear that the breach element cannot be proved and that Wal-Mart has therefore met its summary judgment burden. Discussion of proof of the other elements is moot.