900 So.2d 131 (2005)
Christine BOURQUARD
v.
WINN DIXIE LOUISIANA, INC.
No. 04-CA-1150.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*132 Hilary G. Gaudin, Elizabeth M. Gaudin, Gaudin & Gaudin, Gretna, LA, for Plaintiff/Appellant, Christine Bourquard.
David P. Curlin, Clare W. Trinchard, Trinchard & Trinchard, LLC, New Orleans, LA, for Defendant/Appellee, Winn-dixie Louisiana, Inc.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This suit arises from a trip-and-fall accident that occurred in front of a grocery store. The plaintiff appeals a judgment that granted the defendant's motion for summary judgment and dismissed her claims with prejudice. Finding there are genuine issues of material fact that should be decided by a trial, we reverse and remand for further proceedings.
*133 Christine Bourquard filed suit against Winn-Dixie Louisiana, Inc., alleging that on or about March 6, 2002, she was a customer at Winn-Dixie Store #1329, located at 211 Veterans Boulevard in Metairie. As she walked out of the store, her heel caught in a crack in the concrete directly outside the door, causing her to fall and to sustain injuries. She alleged the accident was caused by the negligence of the defendant and its employees in allowing a dangerous condition to exist, failing to warn of a dangerous condition, failing to provide for the safety of its customers, and other matters to be shown at trial. She sought recovery against the defendant for damages, experts' fees and costs, and costs of the proceedings.
Winn-Dixie filed a motion for summary judgment, asserting it does not bear liability for the plaintiff's fall because the plaintiff cannot show her fall was caused due to any fault or legal responsibility of Winn-Dixie Louisiana, Inc.
In support of the motion, the defendant relied on deposition testimony of the plaintiff. The plaintiff testified that on the day of her accident, she went to Winn-Dixie intending to cash a check. She parked her car in a no-parking zone in front and went into the store with her checkbook. While in the store, she realized that she needed her license and exited the store to go back to her vehicle to retrieve the license. She was walking a little fast, not a regular pace, when she suddenly fell to the ground. When she fell, she dropped her checkbook and her shoe came off.
The plaintiff stated that prior to the accident she did not see anything that caused her to fall. However, she visited the store a day or two later with an investigator from her attorney's office. They concluded that the area of the fall was near her vehicle parked in the no-parking zone and that her fall was caused by the expansion joint between the concrete sections outside the store.
The plaintiff admitted that she was "blurred" at the time of the fall and could not recall her shoe getting caught in the joint. She also admitted that she had no knowledge at the time of the fall as to what caused it and that she surmised what had caused the accident after visiting the scene with the investigator.
In additional support of the summary judgment motion, Winn-Dixie attached the affidavit of Kevin Stretzinger, the Winn-Dixie co-manager at the time of the accident. Stretzinger stated that he has been employed at the Winn-Dixie location for a number of years as a co-manager; that he investigated the accident involving the plaintiff; and that at the time of the accident there was no debris in the area, nor was there any cracked concrete. He described the expansion joint as being one inch wide where it separates the different concrete sections. He also said there had been no other falls in that area during his employment.
Accordingly, Winn-Dixie argued that the plaintiff cannot prove the expansion joint caused her fall. Alternatively, even assuming the expansion joint was the cause, Winn-Dixie asserted it should not bear any liability because the expansion joint did not present an unreasonable risk of harm.
In opposition to the motion for summary judgment, the plaintiff submitted her recorded statement, given to the Winn-Dixie Claims Office on June 27, 2002, in which she made the following relevant remarks: The accident took place outside of the store about 10 to 15 feet from the automatic doors. She went to walk to the right, where her car was parked in the fire zone, and as soon as she turned, "it was like bam, [she] was on the ground."
*134 Regarding the cause of her fall, the plaintiff asserts there is abundant circumstantial evidence that she tripped in the expansion joint: she found her shoe lying immediately adjacent to the crack immediately after the fall; the heel of her shoe fits precisely into the crack; the shoe bears scuff marks where it scraped against the concrete slabs as it sank into the depression; and she noticed blood on the pavement where her chin and cheek had landed, her precise body's length away from the crack. In addition, she recalled there was a post "right there" when she was getting up, and she saw a post next to the crack in question when she returned to the scene later. Her shoe was lying sideways next to the crack.
The plaintiff said her shoe was wedged in "a piece of cement where it should have been filled with either tar or wood.... the walkway walking out of Winn-Dixie." Asked why she thought it should have been filled with tar or wood, the plaintiff replied that it was filled with wood, but where the part of her heel got caught wasn't filled. She estimated the unfilled area was about a foot long and approximately an inch deep.
The plaintiff said that after she fell, someone helped her up and was escorted back into the store. Her chin was split open and her cheek was "all messed up." An EMT came and told her she needed to go to the hospital for stitches. She said she could not clearly recall the minutes following her fall because she was "hazy" after she got up.
The plaintiff also identified photographs taken latera demonstration of her theory of the accidentthat showed one of her shoes with its heel stuck in a crack in the concrete. She stated she believed that was the shoe she had been wearing on the day of the accident, because its heel was scuffed. She said that immediately after the accident, she found her shoe lying sideways next to the crack.
The plaintiff also filed a report from an expert safety professional, which stated that the expansion joint in question was filled with wood and showed evidence of an attempt to repair an adjoining section of the same expansion joint; however, "apparently, after that one section of wood was removed and repaired, another section of wood deteriorated and was not repaired." The expert also noted that the expansion joints in the entire Winn-Dixie parking lot are filled with a tar-like substance to prevent someone from stepping into the vacated expansion joint area.
In addition, the plaintiff attached a report from the accident investigator who visited the scene with her. The report stated there was a gap between the two pieces of concrete, with a wooden strip between them, and an area within this gap of several inches that was missing the wooden breaker between the concrete slabs. The depth of the missing breaker was approximately one inch. Further, the shoe that the plaintiff was wearing was a high-heel shoe and when the high heel of the shoe was placed in the missing wooden area of the slabs, it "was found to be a perfect fit."
The trial court found there were no genuine issues of material fact and that the mover was entitled to judgment as a matter of law. The plaintiff has appealed.
On appeal the plaintiff contends the trial court erred because there are genuine issues of material fact that preclude summary judgment: specifically, whether the plaintiff's fall was caused by her tripping in the expansion joint and whether the expansion joint was unreasonably dangerous.
Appellate courts review rulings on motions for summary judgments de novo, using *135 the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. See Goins v. Wal-Mart Stores, Inc., 01-1136, p. 5 (La.11/28/01), 800 So.2d 783, 788; Taylor v. Rowell, 98-2865, p. 3 (La.5/18/99), 736 So.2d 812, 814.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La.C.C.P. art. 966(A)(2). The procedure is favored in Louisiana and shall be construed to accomplish these ends. Id. Summary judgment shall be rendered if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
The mover, Winn-Dixie in this case, has the burden of proof. La.C.C.P. art. 966(C)(2). However, because Winn-Dixie will not bear the burden of proof at trial, its burden does not require it to negate all essential elements of the plaintiff's action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to her action. Id. If Winn-Dixie meets this initial burden of proof, the burden shifts to the plaintiff to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden at trial. Id. If the plaintiff fails to meet this burden, there is no genuine issue of material fact, and Winn-Dixie is entitled to summary judgment. La.C.C.P. art. 966. See, Goins, 01-1136 at p. 6, 800 So.2d at 788.
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the out-come of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. [Citations omitted.]
Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.
Two theories of liability are available in Louisiana to a plaintiff claiming injury caused by a thing's condition. The first theory is negligence, under Articles 2315 and 2316 of the Louisiana Civil Code, and the second theory is strict liability under Article 2317 of the Louisiana Civil Code. Under both theories, the plaintiff has the burden of proving that the thing's condition presented an unreasonable risk of harm, or was defective, and that this condition was a cause-in-fact of the plaintiff's injuries. Both theories employ the duty-risk analysis on a case by case basis. The plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the requisite duty was breached by the defendant, and that the risk of the harm was within the scope of the protection afforded by the duty breached. [Citations omitted.]
Scramuzza v. River Oaks Inc., 03-959, pp. 9-10 (La.App. 5 Cir. 3/30/04), 871 So.2d *136 522, 529, writ denied, 04-1088, 876 So.2d 839 (La.6/25/04).
Under the duty-risk analysis, the plaintiff first must prove that the alleged defect in the thing was a cause-in-fact of the plaintiff's harm. "A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm.... Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder." Lasyone v. Kansas City Southern R.R., 00-2628, p. 9 (La.4/3/01), 786 So.2d 682, 691.
In addition, under La.C.C. arts. 2317 and 2317.1 the plaintiff must prove that the owner/custodian of a defective object knew or should have known of the unreasonable risk of harm and could have prevented the damage by the exercise of reasonable care. Rolf v. Wal-Mart Stores, Inc., 00-1720, p. 3 (La.App. 5 Cir. 2/14/01), 782 So.2d 15, 16.
"The risk-utility balancing test weighs factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved." Boyle v. Board of Sup'rs, Louisiana State University, 96-1158, p. 5 (La.1/14/97), 685 So.2d 1080, 1083.
[W]hether a defect presents an unreasonable risk of harm "is a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." ... "The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically." ... The concept, which requires a balancing of the risk and utility of the condition, is not a simple rule of law which can be applied mechanically to the facts of the case.... Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. [Citations omitted.]
Reed v. Wal-Mart Stores, Inc., 97-1174, p. 4 (La.3/4/98), 708 So.2d 362, 364.
"In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair." Reed, 97-1174 at p. 5, 708 So.2d at 365. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Id.
"Whether a risk is unreasonable is `a matter wed to the facts' and must be determined in light of the facts and surrounding circumstances of each particular case." Dupree v. City of New Orleans, 99-3651, pp. 13-14 (La.8/31/00), 765 So.2d 1002, 1012.
Bearing these principles in mind as well as the facts presented by the parties in connection with the motion for summary judgment, we conclude the trial court erred in granting summary judgment. The plaintiff presented circumstantial evidence regarding the cause of her fall; if the trial court found she had not proved the cause of her fall, that determination required the court to make a factual finding that was inappropriate on motion for summary judgment. Similarly, if the trial court found she had sufficiently proven the cause of her fall, but had failed to show she could prove the expansion joint was unreasonably dangerous, that was a factual determination unsuitable on a motion for summary judgment.
For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed against the *137 defendant-appellee, Winn-Dixie Louisiana, Inc.
REVERSED AND REMANDED.