971 So.2d 1163 (2007)
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
CENTRAL GULF TOWING, L.L.C. and John Doe.
Chet Morrison Contractors, Inc. and Lexington Insurance Company
v.
Central Gulf Towing, L.L.C.
Nos. 07-CA-166, 07-CA-167.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*1165 Michael D. Fisse, Jonathan H. Sandoz, Daigle Fisse & Kessenich Law Firm, Attorneys at Law, Madisonville, Louisiana, for plaintiff/appellee.
Rufus C. Harris, III, Alfred J. Rufty, III, Cindy Galpin Martin, Attorneys at Law, New Orleans, Louisiana, for defendant/appellant.
David Shaw, Stephens & Grace, Attorney at Law, Metairie, Louisiana, and Donald A. Hoffman, Mary Ann Wegmann, Martin A. Childs, Hoffman Seydell, LLC, Attorneys at Law, New Orleans, LA, for defendant/appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and GREG G. GUIDRY.
CLARENCE E. McMANUS, Judge.
Plaintiff, the State of Louisiana by and through Department of Transportation and Development (DOTD), filed suit in the 24th Judicial District Court against Central Gulf Towing, LLC, (Central Gulf) for damages that occurred when the boom of a crane struck the Crown Point Bridge. The crane was located on a barge being transferred by a tugboat owned and/or operated by Central Gulf at the time of the accident. Plaintiffs Chet Morrison Contractors, Inc and Lexington Insurance, (Morrison) the owner and insurer of the crane, filed suit in the 17th Judicial District Court against Central Gulf for damages to the crane. This suit was transferred to the 24th Judicial District court and consolidated with the suit filed by DOTD. Thereafter, Central Gulf filed a third party demand against Morrison for indemnity.
Morrison filed a motion for summary judgment, seeking dismissal of the third party demand filed by Central Gulf. Morrison also filed an additional motion for summary judgment on the issue of liability, alleging that Central Gulf was 100% at fault in the cause of the accident. DOTD likewise filed a motion for summary judgment on the issue of liability. The trial court rendered judgments in favor of DOTD and Morrison, and against Central Gulf, finding that Central Gulf was entirely at fault in the cause of the accident and further dismissing its third party demand against Morrison. Central Gulf appeals from these decisions of the trial court. Morrison filed an answer, seeking damages for frivolous appeal.
In this appeal, Central Gulf alleges that the trial court committed manifest error in granting the motions for partial summary judgment without determining the comparative fault of the respective parties. Central Gulf further alleges that the trial court *1166 erred in granting the summary judgment motions filed by Morrison without ruling on the validity of the indemnity agreement between them.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action. . . ." La. C.C.P. art. 966(A)(2).
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., 01-1136, (La.11/28/01), 800 So.2d 783. We ask the same questions as the district court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Government, 880 So.2d 1, XXXX-XXXX (La.7/6/04).
The undisputed facts of this case show that on August 26, 2003, the vessel (tug-boat) "Desiree" was transporting a barge carrying a Manitowoc 3900 crane, with a 120 foot boom down the Intercoastal waterway. In the early hours of the morning, the boom of the crane struck the Crown Point Bridge.
Chris Martinez from Morrison stated in deposition that he set up the crane on the barge and then asked Captain Pitre if the setup was okay. Captain Pitre responded yes. Chris Martinez further stated that he was available, and would have gone to further lower the boom when the barge approached the bridge, if he had been called to do so.
Captain Pitre was the captain on the tug "Desiree" that was towing the barge with the crane on it. He stated in deposition that he accepted the barge with the crane after conducting a visual inspection. He did not verify the exact height of the crane boom, and he did not request that it be lowered. He also did not look at the angle indicator located on the boom, which would have given him the correct height. Pitre admitted that he was asked by Martinez if the height was good or if it needed to be changed, and he (Pitre) accepted the crane as it was.
Captain Pitre further stated that when the tug approached the bridge, he was piloting the tug. Pitre did not have a member of his crew act as a lookout; in fact his crew was asleep at the time. Pitre also stated that he did not use a spotlight to illuminate the bridge that they were approaching. Pitre was not looking at the bridge, but instead he was looking at the fender system to make sure that they did not allide on the side, and therefore he did not know that the allision was impending. He did not slow the tug down before the hit.
Captain Pitre further admitted that he made an assumption as to the height of the crane, and that he did nothing to independently determine the height of the crane boom from the waterline. He estimated *1167 the crane height at 60 feet, and believed there was enough room for clearance as the bridge height was 73 feet. In actuality, he missed the clearance requirement by approximately one foot. Pitre further stated that he had passed under the bridge with the same crane and barge on previous occasions and never had any problems.
In its first allegation of error, Central Gulf alleges that the trial court erred in failing to consider apportioning the comparative fault of Morrison. Morrison responds that the trial court did not err, as the undisputed facts fail to show any fault on its part to be apportioned. In support of its argument, Morrison relies on two burden shifting presumptions invoked when a moving vessel allides with a stationary vessel.
[1]The Oregon Rule creates a rebuttable presumption of fault against a moving vessel that, under its own power, allides with a stationary object. "This presumption of negligence may be rebutted by showing by a preponderance of the evidence, either that the allision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the allision was an unavoidable accident." Superior Construction Company v. Brock, 445 F.3d 1334 (11th Cir. Apr. 4, 2006).
In this case, the undisputed facts show that Central Gulf has not rebutted the presumption of negligence, since the undisputed facts show that the sole cause of the accident was the height of the boom when passing under the bridge.
Second, the Pennsylvania rule provides that "when . . . a ship at the time of a[n allision] is in actual violation of a statutory rule intended to prevent [allisions], it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that the fault might not have been one of the causes, or that it probably was not, but that it could not have been." Superior Construction Company, supra. In this case, Captain Pitre admitted that he failed to post a proper lookout, in violation of the International Collision Regulations. Central Gulf cannot assert that his failure could not have been a cause in the accident in question.
The case of Ryan Walsh Stevedoring Co., Inc. v. James Marine Service, Inc., 557 F.Supp. 457 (E.D.La. Feb 22, 1983), affirmed 729 F.2d 1457, (5th Cir. Mar 19, 1984), cert. den. James Marine Service, Inc. v. Ryan Walsh Stevedoring Company, Inc., 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (U.S.La. Nov 05, 1984), involved a similar accident. In that case, the boom of the crane struck the Huey P. Long Bridge. The court, in finding the tug solely at fault in the accident, stated that:
The master of a tug towing an unmanned barge must know all conditions essential to the safe accomplishment of the undertaking or voyage. This knowledge includes the depth of the water, the ordinary obstructions, the state of the tides and water levels in the channel, and the clearance of bridges to be negotiated. A tug must make a reasonable inspection of her tow before undertaking a voyage. The tug master, moreover, must obtain knowledge from personal cognizance, or avail himself of the means of knowledge, of conditions likely to produce or contribute to a loss, unless appropriate means are adapted to prevent *1168 it. "Captains [are] held to a standard of prudent navigation, including the knowledge they should have had." (Citations omitted).
At page 461. See also Complaint of J.E. Brenneman Co., 782 F.Supp. 1021 (E.D.Pa. Jan 08, 1992)
The court further found that the fact that the tug had successfully navigated the same barge under the same bridge on two prior occasions did not relieve the captain of his responsibility to check the bridge clearance and boom height before embarking on the current trip. The court noted that once the captain of the tug took over control of the barge with the crane, without knowledge of the height of the crane boom or the vertical clearance of the bridge, all responsibility for the safe passage shifted to him, and that it was his responsibility to either obtain the requisite knowledge or not to proceed with the tow.
Therefore in present case, the fact that the captain had successfully passed under the bridge with the same crane in the past did not relieve him of the responsibility of checking his clearance on this particular voyage. Walsh, supra; Complaint of J.E. Brenneman, 782 F.Supp. 1021.
Central Gulf cites to the case of Arkansas State Highway Com'n v. Arkansas River Co., 271 F.3d 753, (8th Cir. Oct 16, 2001) for the proposition that the tug owner and the barge owner could be comparatively at fault in an allision, and alleges that the trial court erred in failing to find issue of fact that would establish comparative fault. We find however, that the undisputed facts fail to establish any comparative fault on the part of Morrison.
Captain Pitre admitted in deposition that he proceeded with the tow after only a visual inspection of the boom, and without ascertaining the water height or checking the bridge clearance. Both he and Martinez stated that Martinez asked if the boom was okay, and Pitre replied that it was. Pitre then proceeded on the journey, and failed to have a lookout when approaching the bridge. We find no error in the trial court's determination that the undisputed facts of this case warrant a finding that defendant Central Gulf was 100% at fault in the cause of this accident.
Central Gulf next argues that the trial court erred in granting summary judgment without considering the validity or applicability of the indemnity agreement between itself and Morrison, in ruling on Morrison's claim against Central Gulf for the damage to the crane.
On January 25, 1999, Morrison and Central Gulf entered into a Master Service Contract which contains reciprocal indemnity agreements. The contract specifically provides that Morrison releases Central Gulf and its subcontractors for liability for property damage or loss, "regardless of how such property damage or loss is caused even if caused by the negligence, whether sole or concurrent, or active or passive, or other legal fault, including strict liability" of Central Gulf.
Central Gulf argues that "because Chet Morrison seeks damages form Central Gulf for the property damage to its crane allegedly incurred through the negligence of Central Gulf, this claim is plainly encompassed in the indemnity provision." Morrison counters that, despite the Master Service Agreement, the indemnity agreement is not applicable in this case because the contract was one of towage.
"A contract for a tug to move a barge is one of towage." Agrico Chemical Co. v. M/V BEN W. MARTIN, 664 F.2d 85, 90 (5th Cir. December 17, 1981).
Generally, a contract to tow a barge will only be regarded as a contract of affreightment when the tug and barge utilized *1169 to move cargo from one point to another are owned by the same person. See, Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927). Following this precedent, the Fifth Circuit has recognized that where a towing company is not the owner (or charterer) of the barge, a contract to tow the barge is one of towage and not affreightment. See, Mississippi Valley Barge Line v. T.L. James & Co., 244 F.2d 263 (5th Cir.1957).
Barnett Marine, Inc. v. Cargo of Crane Equipment and Machinery, 1998 WL 336701 (E.D.La. June 19, 1998).
In Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), for example, the Supreme Court invalidated a towage contract releasing the tower from all liability for its own negligence on public policy grounds. The Bisso doctrine, reduced to its simplest form, is a judicial rule, based on public policy, which generally invalidates contracts releasing towers from all liability for their negligence. Hercules, Inc. v. Stevens Shipping Co., Inc., 698 F.2d 726 (5th Cir.2/22/83) Ftnt. 9. See also Dominici v. Between the Bridges Marina, 375 F.Supp.2d 62, (D.Conn.6/27/05).
The undisputed facts of this case show that the barge was provided by Morrison. Central Gulf did not own the barge, and did not provide the barge for towing. Thus, the contractual language at issue provided an agreement for towage, not affreightment. Further, the clause at issue operates to release all liability. Thus, the indemnity provision is invalid under the Bisso doctrine.
Morrison answered and requested damages and/or sanctions for frivolous appeal, pursuant to C.C.P. art. 2164. An appeal is not automatically deemed frivolous simply because it lacks merit. La. C.C.P. art 2164, is penal in nature and must be strictly construed. It provides that an appellate court may award damages for frivolous appeal when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates. Alombro v. Alfortish, 02-1081 (La.App. 5 Cir. 4/29/03), 845 So.2d 1162, writ denied, 03-1947 (La.10/31/03), 857 So.2d 486. We do not find that the present matter meets the requirements of a frivolous appeal, and therefore we decline to award additional attorney fees.
For the above discussed reasons, the judgments of the trial court granting summary judgment in favor of plaintiffs DOTD, and Morrison are affirmed. All costs are assessed against appellant, Central Gulf.
AFFIRMED.
NOTES
[1] Black's Law Dictionary defines allision as "(t)he sudden impact of a vessel with a stationary object such as an anchored vessel or a pier."