850 So.2d 67 (2003)
LAMOCO, INC., et al.
v.
Howard H. HUGHES.
No. 02-1498.
Court of Appeal of Louisiana, Third Circuit.
July 9, 2003.
Rehearing Denied August 13, 2003.
*68 Herman E. Garner, Jr., Larry C. Hebert, Ottinger, Hebert, L.L.C., Lafayette, LA, for Defendant/Appellee, Howard H. Hughes.
John W. Grant, Lafayette, LA, for Plaintiff/Appellant, Lamoco, Inc.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
MARC T. AMY, Judge.
The plaintiffs brought an action seeking declaratory relief decreeing that a mineral royalty remained in full force and effect. After answering the plaintiffs' petition with a reciprocal reconventional demand, the defendant filed a motion for summary judgment, and the trial court granted his motion. The plaintiffs appealed. For the following reasons, we reverse and remand for further proceedings.

Factual and Procedural Background
Howard H. Hughes owns certain property and its mineral rights in Jefferson Davis Parish. On July 18, 1996, Mr. Hughes signed a mineral lease of this property in favor of Texas Meridian Resources Exploration, Inc. It states, in part:
This lease shall be for a term of FOUR (4) years and SIX (6) months from the date hereof (called "primary term") and so long thereafter as oil, gas or some other mineral is being produced or drilling operations are conducted either on this land or on acreage pooled therewith[.][1]
*69 (Footnote added.) On July 30, 1998, Mr. Hughes signed a document, entitled "Royalty Deed," in favor Lamoco, Inc., covering the same property as the mineral lease. But, there is no language in this document connecting it with the mineral lease. Nonetheless, the Royalty Deed includes the following provision:
This conveyance shall be for a period of Four (4) years & Six (6) months from July 18, 1996, and as long thereafter as oil, gas or other minerals are produced from said lands, or from lands with which said lands are pooled or unitized, and also as long thereafter as drilling or reworking operations are being conducted on said lands, or on lands pooled or unitized therewith, without more than 90 days cessation of operations, in an effort to produce oil, gas or other minerals, and if said operations result in the production of said minerals, then for as long thereafter as oil, gas or other minerals are produced from said lands, or from lands pooled or unitized therewith. A shut-in gas well shall be considered as a producing well and shall perpetuate the term of this conveyance.
A document attached to the affidavit of Randle Myers indicates that drilling operations were commenced on the leased premises on December 17, 2000. This document also indicates that, since commencement, those drilling operations have continued to the current date without cessation for a period in excess of ninety days. However, one of Lamoco's responses to Mr. Hughes' request for admissions provides that there was no mineral production "during the time period of four (4) years and six (6) months from July 18, 1996 through January 18, 2001."
On October 21, 2001, Lamoco[2] brought an action seeking declaratory relief decreeing that the Royalty Deed remained in full force and effect. Mr. Hughes responded by denying Lamoco's allegations and filing a reconventional demand seeking declaratory relief decreeing that the Royal Deed had expired. On April 24, 2002, Mr. Hughes filed a motion for summary judgment. Lamoco did not file a competing motion for summary judgment. After the trial court granted Mr. Hughes' motion, Lamoco appealed,[3] alleging the following assignment of error: "THE TRIAL COURT ERRED IN GRANTING [MR. HUGHES'] MOTION FOR SUMMARY JUDGMENT AND IN EFFECT FINDING THAT THE LANGUAGE OF THE ROYALTY DEED IN QUESTION EFFECTED A REDUCTION IN THE PRESCRIPTIVE PERIOD APPLICABLE TO THIS ROYALTY DEED."

Discussion
On appeal, the parties generally assert the same arguments presented to the trial court. Mr. Hughes alleges that the language in the provision of the Royalty Deed at issue was an express reduction of the *70 ten-year prescriptive period of nonuse applicable to royalty interests. He further contends that, since a mineral royalty was at issue, the drilling operations without production were insufficient to interrupt the prescriptive period. As such, Mr. Hughes claims that the Royalty Deed has prescribed because there was no mineral production during the time period given by the provision. On the other hand, Lamoco points out that the ten-year prescriptive period of nonuse in the Mineral Code is always applicable, unless another period is specifically contracted for, and Lamoco argues that no such period was contracted for. Rather, Lamoco maintains that the parties contracted for an initial time period for the commencement of operations. Since it began drilling operations prior to January 18, 2001, Lamoco claims that the Royalty Deed remains in full force and effect.
An appellate court will apply the de novo standard of review when reviewing a summary judgment and will use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., 01-1136 (La.11/28/01), 800 So.2d 783. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to [a] judgment as a matter of law." La.Code Civ.P. art. 966(B). In this case, there is no genuine issue of material fact. The parties only dispute the legal interpretation of the provisions of the Royalty Deed.
"A mineral royalty is the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another." La. R.S. 31:80. La.R.S. 31:85 provides the following means to extinguish a mineral royalty:
(1) prescription resulting from nonuse for ten years;
(2) confusion with the title out of which it was created;
(3) renunciation of the royalty right on the part of him to whom it is due, or the express remission of his right;
(4) expiration of the time for which the royalty right was granted or happening of the dissolving condition attached to the mineral royalty; or
(5) extinction of the right of him who established the mineral royalty, except that the extinction of a mineral servitude by inheritance or by any act of the servitude owner does not extinguish a royalty burdening the servitude unless the royalty owner is a party to the act or otherwise consents expressly and in writing to become bound by it.
(Emphasis added.) When crafting a mineral royalty, "[u]nless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of [the Mineral] Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good." La.R.S. 31:3. For example, "[p]arties may either fix the term of a mineral [royalty] or shorten the applicable period of prescription of nonuse or both." La. R.S. 31:74 (emphasis added); see also La. R.S. 31:103. In the absence of a contractual provision reducing the prescriptive period, the prescriptive period of nonuse of a mineral royalty shall be ten years. La. R.S. 31:16. When the parties attempt to stipulate to a prescriptive period greater than ten years, the period is reduced to ten years by operation of law. La.R.S. 31:74. The prescriptive period of nonuse can only be interrupted by production of any mineral covered by the act creating *71 the royalty. La.R.S. 31:87. Yet, although a mineral royalty will always be subject to the prescriptive period of nonuse, our review of the Mineral Code does not reveal any legal principle that would prohibit the holder of a mineral royalty from extending the term through the act of drilling without production. Thus, our Mineral Code recognizes that the term of a mineral royalty and the prescriptive period of nonuse are distinctly different concepts.
In light of these legal principles, we will first determine whether the provision at issue constitutes an express reduction of the prescriptive period of nonuse, the term of the mineral royalty or both. Initially, we note that the word "prescription," or any derivative thereof, is never used within the provision or throughout the entire Royalty Deed. While the first sentence of the provision only uses the word "conveyance" when addressing the four-year, six-month period, the last sentence of the provision refers to the four-year, six-month period as the "term of this conveyance." We additionally note that the provision provides methods other than production of minerals to perpetuate the conveyance. In sum, our view is that the Royalty Deed does not present a reduction of the prescriptive period of nonuse, and we find that the provision at issue only constitutes the term of a mineral royalty.
Further, the Royalty Deed provides that the term of the mineral royalty can be perpetuated beyond the four-year, six-month period, "as long thereafter as drilling or reworking operations are being conducted on said lands, or on lands pooled or unitized therewith, without more than 90 days cessation of operations, in an effort to produce oil, gas or other minerals." The document attached to the affidavit of Randle Myers states that drilling operations began on the leased premises prior to the expiration of the four-year, six-month period and that these drilling operations have continued to the current date without cessation in excess of ninety days. However, the Royalty Deed is still subject to the ten-year prescriptive period of nonuse. Lamoco did admit that there was no mineral production "during the time period of four (4) years and six (6) months from July 18, 1996 through January 18, 2001." Since the record indicates that less than ten years have passed since the creation of the mineral royalty, we find that the Royalty Deed has not prescribed. See La.R.S. 31:86.
Accordingly, we conclude that Mr. Hughes failed to show that he was entitled to a judgment as a matter of law, and, in turn, the trial court erred when it granted his motion for summary judgment.

DECREE
For the foregoing reasons, we reverse the judgment of the trial court granting the motion for summary judgment of the defendant in its entirety and remand this matter for further proceedings. All costs of this appeal are assigned to the defendant-appellee, Howard H. Hughes.
REVERSED AND REMANDED.
NOTES
[1] The mineral lease further provides:

4 After beginning operations on the lands or on acreage pooled therewith (or with any part thereof) and prior to the discovery and production of minerals in paying quantities, Lessee may maintain the rights granted during and after the primary term by continuing such operations without the lapse of more than ninety (90) days between abandonment of work on one well and beginning operations for drilling another; and during the primary terms such operations may be discontinued and the rights granted maintained by resuming rental payments, by paying within ninety (90) days from the discontinuance of operations (regardless of the fixed rental paying date) the proportion of the fixed yearly rental that the number of days between the end of said ninety (90) days and the next ensuing rental paying date bears to the twelve months' period; but, if said ninety (90) days should expire during any year for which rentals have been paid, no further rental shall be due until the next fixed rental paying date.
. . . .
6 After the discovery and production of oil, gas or any other mineral in paying quantities, either on the leased premises or on lands pooled therewith, the rights granted shall be maintained in effect during and after the primary term and without the payment of the rentals hereinabove provided for so long as oil, gas or some other mineral is being produced in paying quantities, or Lessee is carrying on operations with reasonable diligence looking to the production thereof. It is provided, however, that if, after the discovery and production of oil, gas or other minerals in paying quantities, the production thereof should cease from any cause this lease shall terminate unless Lessee resumes or restores such production, or commences additional drilling, reworking or mining operations within ninety (90) days thereafter and continues such operations without the lapse of more than ninety (90) days between abandonment of work on one well and commencement of reworking operations or operations for the drilling of another, in an effort to restore production of oil, gas or other minerals, or (if during the primary term) resumes the payment of rentals in the manner hereinabove provided for in connection with the abandonment of wells drilled.....
[2] In addition to Lamoco, the petition includes many other named plaintiffs. The petition explains that "subsequent to [Lamoco's] acquisition of the Royalty Interests it made conveyances of undivided interests in the Royalty Interests such that those parties identified as Petitioners in these proceedings are the current holders and owners of the Royalty Interests."
[3] The record indicates that Lamoco filed a motion for a new trial, which the trial court ultimately denied, prior to bringing the instant appeal.