# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-984

**ST. MARY OPERATING COMPANY**

**VERSUS**

**LESTER JOSEPH CHAMPAGNE, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82422 D
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Billy Howard Ezell, Judges.

**REVERSED AND RENDERED.**

**John Weir Grant**
**P. O. Drawer 52604**
**Lafayette, LA 70505-2604**
**Telephone: (337) 234-3777**
**COUNSEL FOR:**
   **Defendants/Appellees - Lester Joseph Champagne, Irene Marie, Romero Champagne, Mary Frederick Luquette, and Ricky D. Luquette**

**Larry Charles Hebert**
**Ottinger, Hebert**
**P. O. Box 52606**
**Lafayette, LA 70505-2606**
**Telephone: (337) 232-2606**
**COUNSEL FOR:**
   **Plaintiff/Appellee - St. Mary Operating Company**

**Charles Randall Loewen**
**430 Copperfield Way**
**Youngsville, LA 70592**
**Telephone: (337) 857-2002**
**COUNSEL FOR:**
**Defendants/Appellants - Servitude Owners**

**Ted L. Ayo**
**207 South Washington Street**
**Abbeville, LA 70510**
**Telephone: (337) 898-4320**
**COUNSEL FOR:**
**Defendants/Appellees - Lester Joseph Champagne, Irene Marie, Romero Champagne, Mary Frederick Luquette, and Ricky D. Luquette**

**Brad Andrew Adams**
**228 St. Charles Avenue - #814**
**New Orleans, LA 70130**
**Telephone: (504) 522-6257**
**COUNSEL FOR:**
**Defendants/Appellees - Carolyn L. Doiron, Cornelieus J. Doiron, and Mary Doiron Phillips**

THIBODEAUX, Chief Judge.

St. Mary Operating Company filed a concursus proceeding with the trial court in order to determine to whom the royalty proceeds of an oil well on land in Vermillion Parish belongs. A group of the defendants, Carl Doumit, et al. (Servitude Owners), who are the owners of a mineral rights servitude that was reserved in a cash sale deed, appeal the trial court judgment granting the motion for summary judgment submitted by the other group of defendants, who are the current owners of the land, Lester Champagne, et al. (Landowners). In granting the Landowners' motion for summary judgment, the trial court ruled that the language in the cash sale deed created a ten-year fixed term mineral servitude, as opposed to a mineral servitude subject to the rules of prescription.

The Servitude Owners had also filed their own motion for summary judgment, which was denied by the trial court. The Servitude Owners appeal the denial of their motion for summary judgment as well. Because all mineral servitudes created in Louisiana are subject to the rules of prescription, and because the parties did not specifically state in the cash sale deed that the reserved ten-year period was for a fixed term, and was not subject to the rules of prescription, we reverse the trial court's judgment granting the motion for summary judgment submitted by the Landowners, and we grant the motion for summary judgment submitted by the Servitude Owners.

I.

**ISSUE**

Under the Louisiana Mineral Code, does the phrase in a cash sale document, "for a period of 10 years," create a fixed, ten-year term, not subject to

prescription, or is this phrase a reaffirmation of the parties' adoption of the regular ten-year prescriptive period, making it subject to interruption?

## II.

## **FACTS**

On June 22, 1993, the Servitude Owners parceled together tracts of land totaling roughly thirty-seven acres and sold it to the Landowners. The Landowners drew up a cash sale deed, which included the following clause: "Vendors reserve unto themselves all of the minerals underlying or which may be produced from the above described tracts for a period of ten years, this being a reservation of royalties, executive rights, bonuses, delay rentals, and all other mineral rights whatsoever."

St. Mary Operating Company drilled an oil well on the land pursuant to a lease between itself and the Servitude Owners and began drilling operations at the well on or about March 5, 2003. Oil has been, and is still, being produced from that well. St. Mary Operating Company is the operator of the well. A dispute arose as to whom the royalty payments belonged. Instead of deciding this issue on its own, St. Mary Operating Company filed this concursus proceeding with the district court asking the court to interpret the clause in the cash sale document and decide who owns the royalty payments.

The trial judge determined that the reservation clause in the cash sale deed reserved a servitude for a fixed term that was not subject to the rules of prescription. Therefore, it could not be perpetuated beyond ten years by the good-faith exploration for minerals within the ten-year period beginning on the date the servitude was established.

The Servitude Owners argue that unless a contract for mineral rights clearly provides statements to the contrary, a mineral servitude of any duration will

2

be subject to prescription. Since it is subject to prescription, it will not terminate at the end of the stated period if prescription is interrupted by use. They argue that when the oil well was drilled within the ten-year period, prescription was interrupted.

III.

## LAW AND DISCUSSION

The Louisiana Mineral Code defines a mineral servitude as, "the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La.R.S. 31:21. A mineral royalty is defined as, "the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another. Unless expressly qualified by the parties, a royalty is a right to share in gross production free of mining or drilling and production costs." La.R.S. 31:80.

The language in the cash sale deed at first seems to create a mineral royalty. This is because it does not specifically state that the Servitude Owners would have the right to go onto the land for the purposes of exploring for, and exploiting minerals found there. However, the record contains a copy of a lease between the Servitude Owners and an oil company which was the predecessor in interest to St. Mary Operating Company allowing the oil company to have access to the land and set up drilling operations on that land. Only the owners of a mineral servitude would have the right to create and enter into such a lease agreement. Therefore, we find that the right created by the parties in the cash sale deed was a mineral servitude. The rules of prescription are the same for both a mineral servitude and a mineral royalty. La.R.S. 31:103.

3

**Standard of Review**

We review an appeal of the granting or denial of a motion for summary judgment de novo, using the same standards and criteria as the trial court.

> An appellate court will apply the de novo standard of review when reviewing a summary judgment and will use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Goins v. Wal-Mart Stores, Inc.*, 01-1136 (La.11/28/01), 800 So.2d 783. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to [a] judgment as a matter of law." La.Code Civ.P. art. 966(B). In this case, there is no genuine issue of material fact.

*Lamoco, Inc. v. Hughes*, 02-1498, p. 4 (La.App. 3 Cir. 7/9/03), 850 So.2d 67, 70, *writ denied*, 03-2603, 860 So.2d 1156 (La. 12/12/03).

In this case, there is no dispute over any material facts. The parties' dispute revolves solely around the legal interpretation and effect of the mineral servitude reserved in the cash sale deed. Therefore, our task is to determine whether the phrase in the cash sale deed, "for a period of ten years," was intended to create a ten-year term, or to merely restate that the parties adopted the standard ten-year prescriptive period imposed by law.

A contract is the law between the parties, and, therefore, we will use the rules of interpretation of contracts detailed in the Louisiana Civil Code to interpret the specific provision at issue in the cash sale deed. *See* La.Civ.Code arts. 2045-57. When a contract reserves mineral rights, it is also governed by the freedoms and restrictions contained in the Louisiana Mineral Code. For example, the Mineral Code states that parties are free to contract for terms that differ from those specified in the Mineral Code, but they may not do so without limit:

La.R.S. 31:3. Freedom of contract and limitations thereon

4

Unless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of this Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good.

As the Comment explains:

. . . .

The role of freedom of contract, however, is not unlimited under the Mineral Code. There are certain principles in the Louisiana mineral property system that are based on public policy. As an example, special attention should be paid to the provisions of Articles 73 through 75, applicable to mineral servitudes. These articles respectively prohibit the creation of one servitude on two or more noncontiguous tracts of land, contracting for a prescriptive period greater than ten years, or making the rules of use of mineral servitudes less burdensome than those provided by the Mineral Code.

La.R.S. 31:72. Parties free to contract except as specifically limited

Parties to an act creating a mineral servitude may alter the applicable legal rules subject to the limitations provided in Articles 73 through 79.

One of the limitations on freedom of contract under the Mineral Code governs the rules of prescription. Louisiana Revised Statutes 31:16 is instructive. It states:

The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence.

Louisiana Revised Statutes 31:27 provides further that:

A mineral servitude is extinguished by:

(1) prescription resulting from nonuse for ten years;

(2) confusion;

5

(3) renunciation of the servitude on the part of him to whom it is due, or the express remission of his right;

(4) expiration of the time for which the servitude was granted, or the happening of the dissolving condition attached to the servitude; or

(5) extinction of the right of him who established the servitude.

Moreover, Louisiana Revised Statutes 31:74 provides:

Right to fix term or shorten prescriptive period; effect of stipulation for prescriptive period greater than ten years

Parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both. If a period of prescription greater than ten years is stipulated, the period is reduced to ten years.

The Official Comments to La.R.S. 31:74 illuminate its meaning.

. . . .

Consideration was given to the matter of establishing rules of construction to aid the courts in determining whether parties intend to fix the duration of a mineral servitude or to subject it to a prescriptive period other than that which would be imposed if the parties were silent. However, it was determined merely to state some guidelines for construction in this comment. In the event of silence as to the term of a mineral servitude, the right created is permanent or perpetual, but it is subject to loss by accrual of the prescription of nonuse.

. . . .

It is established by *Hodges v. Norton*, [8 So.2d 618 (La.1942)] *supra*, and *Bodcaw Lumber Co. of La. v. Magnolia Petroleum Co.*, [120 So. 389 (La.1929)] *supra*, that if a term greater than ten years is specified, this fixes the duration of the interest created. It is, however, still subject to the prescription of nonuse and will expire prior to the running of the specified term if not used within the legal prescriptive period.

. . . .

6

Parties are, of course, free to specify that the stated number of years is the term of the interest and not a prescriptive period.

Taking all of these provisions into account, it is never possible to create a mineral right that will last for more than ten years if it goes unused. However, if parties create a mineral right and *specify* that it will last for more than ten years, then the right is for a fixed term. A fixed term means that the mineral right will end at the terminus of the number of years stated, regardless of whether prescription might have been interrupted by good-faith attempts to recover minerals from the tract of land. Even if parties create a fixed term, it will still be subject to prescription if the right goes unused for ten years from the date it was created. This rule has been affirmed by the Louisiana Supreme Court, and this court:

> In *Hightower v. Maritzky*, [195 So. 518, (La.1940)] *supra*, our Supreme Court said:
>
> '*** The parties to a contract granting a servitude or real right may impose any restriction or limitation that they see fit to impose upon the use or enjoyment of the servitude or the exercise of the right,--except that they cannot stipulate effectually that the servitude or real right shall not be subject to the prescription of ten years, liberandi causa. The reason for that exception to the freedom of contract is in the fundamental rule of public policy that a debtor, or an obligor in the case of a servitude or real right, cannot renounce in advance the benefit of the prescription which may release him or his land from the obligation***'
>
> And, in *Gueno v. Medlenka*, [117 So.2d 817, (La.1960)] *supra*, the same court held:
>
> '*** In this connection, it is to be borne in mind that it is contrary to the public policy of this State to hold property out of commerce and this Court has consistently applied the liberative prescription of ten years in dealing with the exercise of mineral rights.***'

*LeBleu v. LeBleu*, 206 So.2d 551, 555 (La.App. 3 Cir. 1967).

We note that the cash sale deed does not mention prescription at all, nor does it state in clear terms that the ten-year period would be a term not subject to continuation by the interruption of prescription. The Comments to La.R.S. 31:74 explains that if a party wants to create a term and deny the benefit of the interruption of prescription, that intention must be specified.

The Landowners drafted the cash sale deed. If there is a provision in a contract that seems ambiguous or subject to more than one interpretation, it must be interpreted against the party who wrote the text. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished the text. La.Civ.Code art. 2056.

While the parties make much ado about whether or not this court should consider the competing affidavits submitted into the record because they are extrinsic to the contract between them, we do not need the affidavits to determine the legal meaning and effect of the provision at issue. The phrase "for a period of ten years" was a restatement of the default prescriptive period assumed into all mineral rights created in the State of Louisiana because the parties did not specifically state otherwise.

We, therefore, reverse the trial court's judgment granting the Landowners' motion for summary judgment. We reverse the denial of the Servitude Owners' motion for summary judgment. The mineral servitude reserved to them in the cash sale deed is still active and valid because the ten-year prescriptive period was interrupted when mining activities began in March of 2003, within ten years of its creation on June 22, 1993. Accordingly, the mineral servitude will continue to exist until there is a ten-year lapse in the use of the servitude. "When prescription is interrupted, it commences anew from the last day on which operations are conducted

8

in good faith to secure or restore production in paying quantities with reasonable expectation of success." La.R.S. 31:41.

## IV.

## <u>CONCLUSION</u>

"[A] mineral royalty will always be subject to the prescriptive period of nonuse," *Lamoco v. Hughes*, 850 So.2d at 71. Prescription is automatically part of all mineral servitudes, even those that are granted for more than ten years.

The Comment to La.R.S. 31:74 teaches that even though a ten-year prescriptive period is legislatively added to all mineral servitudes and royalties, "[p]arties are, of course, free to specify that the stated number of years is the term of the interest and not a prescriptive period." In this case, because there is no such affirmative statement specifying that the mineral servitude created for a period of ten years would not be subject to prescription, we find that it is subject to prescription. We find that prescription was interrupted in March of 2003, when good-faith mining activities were begun. The mineral servitude will, therefore, continue to exist until there is a ten-year period of nonuse. The trial court's judgment is reversed. All costs of this appeal are assessed against the Landowners, Lester Champagne, et al.

**REVERSED AND RENDERED.**