# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-870


**MACLAFF, INC., UNIVERSITY PARTNERSHIP,**
**AMBASSADOR PARTNERSHIP, ABNAR, INC.,**
**WILBURN ENTERPRISES, L.L.C., AND**
**TERRY WILBURN D/B/A CAT ENTERPRISES**

**VERSUS**

**ARCH INSURANCE COMPANY,**
**RISK MANAGEMENT SERVICES, AND**
**WRIGHT & PERCY INSURANCE, INC.**


**\*\*\*\*\*\*\*\*\*\*\*\***


**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, NO.  2003-1039 "L"**
**HONORABLE MARILYN C.  CASTLE, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\***


**JAMES T. GENOVESE**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\*\*\***


Court composed Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.


                                                            **AFFIRMED.**

**Patrick M. Wartelle**
**Leake & Andersson, L.L.P.**
**Post Office Drawer Z**
**Lafayette, Louisiana 70502**
**(337) 233-7430**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **MacLaff, Inc., University Partnership,**
    **Ambassador Partnership, Abnar, Inc.,**
    **Wilburn Enterprises, L.L.C., and**
    **Terry Wilburn d/b/a/ CAT Enterprises**

**James L. Pate**
**Robert E. Torian**
**LaBorde & Neuner**
**1004 W. Pinhook Road, Suite 200**
**Post Office Drawer 52828**
**Lafayette, Louisiana 70505**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **RMS Insurance Brokerage, L.L.C. and**
  **Liberty Surplus Insurance Corporation**

**Charles P. Carriere, III**
**Haeuser Building, Suite 207**
**8200 Hampson Street**
**New Orleans, Louisiana 70118**
**(504) 865-7300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Wright & Percy Insurance, Inc.**

**GENOVESE, JUDGE.**

In this insurance suit for negligent misrepresentation and/or breach of fiduciary duty, the trial court granted summary judgments in favor of Defendants. Plaintiffs appeal. For the following reasons, we affirm.

**FACTS**

This case arises out of damages caused by Hurricane Lili which struck south Louisiana on October 3, 2002. Plaintiffs, MacLaff, Inc., University Partnership, Ambassador Partnership, Abnar, Inc., Wilburn Enterprises, L.L.C., and Terry Wilburn d/b/a/ CAT Enterprises (collectively franchisees) are owners and operators of McDonald's franchises which sustained property damage as a result of Hurricane Lili.[1] The property damage insurer of the franchisees at the time of Hurricane Lili was Arch Insurance Company (Arch).

Prior to Hurricane Lili's landfall, aware that their existing property insurance policy issued by Zurich Insurance Company (Zurich) was soon to expire, the franchisees contacted their retail insurance agent, Wright & Percy Insurance Agency (Wright & Percy), seeking to procure new property insurance coverage. Wright & Percy, in turn, contacted a wholesale insurance broker, Risk Management Services a/k/a RMS Insurance Brokerage, L.L.C. (RMS), to obtain property damage coverage for the franchisees. RMS secured such a policy through Arch. An RMS Executive Summary, setting forth the details (coverages, deductibles, exclusions, etc.) of the

---

[1]MacLaff, Inc., University Partnership, and Ambassador Partnership are sometimes collectively referred to as the Krampe Plaintiffs due to their common ownership and operations. Wilburn Enterprises, L.L.C. and Terry Wilburn d/b/a/ Cat Enterprises are collectively owned by Terry Wilburn; thus, they are sometimes collectively referred to as the Wilburn Plaintiffs. Lastly, Abnar, Inc. (Abnar) is owned and operated by Ajay Patel. As discussed below, the trial court granted a partial motion for summary judgment on November 13, 2006 dismissing the claims of the Wilburn Plaintiffs. The trial court, on January 4, 2007, granted summary judgment dismissing the remaining plaintiffs' claims.

1

policy, was sent to Wright & Percy for the franchisees. The appropriate premium for said policy was paid by the franchisees. Thus, the franchisees had property insurance coverage through a national McDonald's insurance program with coverage underwritten by Arch in accordance with said Executive Summary and policy provisions.

As a result of property damage to various McDonald's restaurants due to Hurricane Lili, the franchisees submitted claims to Arch. In adjusting the submitted claims, Arch concluded that the losses were to be adjusted by applying the "Named Storm" deductible to determine what amounts were to be paid under the policy. The "Named Storm" deductible in the policy provided as follows:

> **2%** of the combined "Total Insurable Values" for Building, Personal Property and Business Income at risk at place and time of loss, subject to a **$25,000** minimum per occurrence due to loss or damage from "Named Storm". A Named Storm is a windstorm or tropical disturbance that has been named by the National Weather Service. The deductible applies separately to each insured premises and to each Named Storm occurrence. We will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limits of Insurance. ["]Total Insurable Values" means the 100% value of Building, Personal Property, and Business Income insured (using the applicable policy valuation clause) without regard to the Limit of Insurance.

Thus, following the damages sustained by Hurricane Lili, the franchisees were met with a deductible of $25,000 per restaurant. As a result thereof, the franchisees instituted the instant litigation naming as defendants Wright & Percy, Arch, RMS, and RMS's liability insurer, Liberty Surplus Insurance Corporation (Liberty).

With respect to Arch, the franchisees asserted sundry legal theories attempting to establish the applicability of various other deductibles under the policy as opposed

2

to the "Named Storm" deductible of two percent of the total insured value.[2] With respect to RMS and Liberty, the franchisees assert that the inclusion of the "Named Storm" deductible constituted a breach of RMS's fiduciary duty to obtain favorable insurance coverage on their behalf. Alternatively, the franchisees assert that RMS negligently misrepresented the policy provisions, particularly the Executive Summary, by advising them that the deducible was going to remain at two percent of the loss as it had been the previous year as opposed to two percent of the total insured value for a named storm.

On September 20, 2006, RMS and Liberty filed a motion for summary judgment which was heard on November 13, 2006. The trial court granted a partial summary judgment in favor of RMS and Liberty dismissing the claims of Wilburn Enterprises, L.L.C. and Terry Wilburn d/b/a/ CAT Enterprises. Also at the hearing on the motion for summary judgment, the trial court granted the remaining plaintiffs, MacLaff, Inc., University Partnership, Ambassador Partnership, and Abnar, Inc., additional time to direct the trial court to evidence relating to the availability of alternative insurance coverage during the relevant time period. RMS and Liberty were also granted additional time to respond thereto.

On January 4, 2007, the trial court signed a "RULING AND JUDGMENT MOTION FOR SUMMARY JUDGMENT" wherein the trial court expressly stated that no such evidence was produced. Consequently, the trial court also granted summary judgment in favor of RMS and Liberty as to the claims of MacLaff, Inc.,

---

[2]On August 18, 2005, Arch filed a motion for summary judgment wherein it asserted that the Named Storm deductible of 2% of the total insured value applied to all of the plaintiffs' claims. That motion for summary judgment was heard by the trial court on November 13, 2006. After said hearing, the trial court granted the motion for summary judgment on behalf of Arch. A Ruling and Judgment Motion for Summary Judgment was issued and signed by the trial court on January 4, 2007. That portion of said judgment is not the subject of the present appeal.

University Partnership, Ambassador Partnership, and Abnar, Inc.

A formal judgment was signed by the trial court on January 5, 2007, granting summary judgment in favor of RMS and Liberty and dismissing the claims of Wilburn Enterprises, L.L.C. and Terry Wilburn d/b/a/ CAT Enterprises. On January 10, 2007, a motion for new trial was filed by all the franchise owners which was denied by the trial court on January 17, 2007. A second motion for new trial was filed only on behalf of Wilburn Enterprises, L.L.C. and Terry Wilburn d/b/a/ CAT Enterprises which was also denied by the trial court on February 12, 2007. The franchisees appeal.

## ISSUES

In brief, the MacDonald's franchisees present the following issues for our review:

1.  [w]hether the trial court erred in granting the Motion for Summary Judgment filed by Risk Management Services a/k/a RMS Insurance Brokerage[,] and its insurer, Liberty Surplus Insurance Corporation, on causation grounds, despite the existence of numerous issues of material fact as to whether or not RMS, as the agent for both the plaintiffs and the defendant insurer, fulfilled its fiduciary obligation to Plaintiffs to procure a favorable deductible;

2.  [w]hether the trial court erred in granting the Motion for Summary Judgment filed by Risk Management Services a/k/a RMS Insurance Brokerage[,] and its insurer, Liberty Surplus Insurance Corporation, where the evidence shows that RMS negligently misrepresented the named storm deductible, causing Appellants to think they had an acceptable deductible which deprived them of the opportunity to shop the market for a more favorable deductible;

3.  [w]hether the trial court erred in granting the Motion for Summary Judgment filed by RMS and its insurer, Liberty Surplus Insurance Corporation, based upon hearsay testimony;

4.  [w]hether the trial court erred in granting the [M]otion for [S]ummary [J]udgment filed by RMS and its insurer, Liberty

4

Surplus Insurance Corporation, where there was testimony in the record from the retail broker, Wright & Percy Insurance Company, that RMS could have gotten a more favorable wind deductible; and

5.  [w]hether the trial court erred in granting the Motion for Summary Judgment filed by Risk Management Services a/k/a RMS Insurance Brokerage[,] and its insurer, Liberty Surplus Insurance Corporation, based solely upon a causation argument, which should have been reserved to the trier of fact at a full trial on the merits.

As discussed above, the trial court orally granted summary judgment relative to the claims of the Wilburn Plaintiffs at the hearing on November 13, 2006. The trial court expressly found that "[t]here was no representation made to the Wilburnes [sic]." Accordingly, the trial court granted summary judgment in favor of RMS and Liberty dismissing the claims of the Wilburn Plaintiffs without even reaching the issue of causation. We note that although an appeal was taken from this judgment, plaintiffs have not assigned this ruling of the trial court as an error for our review; therefore, it is not properly before this court. Given our determination herein that the franchisees failed to produce factual support sufficient to establish the element of causation, we note that RMS and Liberty would still be entitled to summary judgment dismissing the claims of the Wilburn Plaintiffs.

## LAW AND DISCUSSION

**Standard of Review**

We review an appeal of the granting or denial of a motion for summary judgment de novo, using the same standards and criteria as the trial court.

An appellate court will apply the de novo standard of review when reviewing a summary judgment and will use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Goins v. Wal-Mart Stores, Inc.*, 01-1136 (La. 11/28/01), 800 So.2d 783. Summary judgment is appropriate when "the

5

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to [a] judgment as a matter of law." La.Code Civ.P. art. 966(B).

*Saint Mary Operating Co. v. Champagne*, 06-984, p. 4 (La.App. 3 Cir. 12/6/06), 945 So.2d 846, 849, *writ denied*, 07-301 (La. 4/5/07), 954 So.2d 140 (quoting *Lamoco, Inc. v. Hughes*, 02-1498, p. 4 (La.App. 3 Cir. 7/9/03), 850 So.2d 67, 70, *writ denied*, 03-2603, 860 So.2d 1156 (La. 12/12/03)).

**Causation**

The underlying basis for the imposition of liability against RMS herein is the assertion by the franchisees that RMS was their agent and, therefore, owed them a fiduciary duty to obtain favorable insurance coverage. They contend that the unfavorable policy provisions which were part of the Arch policy constituted a breach of that fiduciary duty. Alternatively, the franchisees assert that RMS negligently misrepresented the policy provisions. The franchisees discuss the issue of agency and fiduciary duty at length in their appellate brief to this court. However, the trial court did not base its grant of summary judgment on these grounds. In fact, the trial court did not address that issue at all. The *sole* basis given by the trial court for granting summary judgment in favor of RMS and Liberty, and dismissing all of the claims of the franchisees against these entities, was the court's finding of a lack of causation.

Diane Alleman, a corporate representative of the Krampe Plaintiffs, who was responsible for insurance matters relating to the entities, testified as follows:

> Q. Have any of these McDonald entities, MacLaff, Inc., University Partnership and Ambassador Partnership, have they ever attempted to obtain insurance coverages for property and casualty damages or losses outside of a [b]ig McDonald's insurance program?

6

A.     Yes, but it couldn't be done.

Q.     When was that attempted? You said it couldn't be done, so it must have been sometime during the last six years; is that right?

A.     Yes.

Q.     Was it during the last couple of years?

A.     Yes.

Q.     What happened?

A.     There's nobody else besides the company that McDonald's approves that will carry insurance for McDonald's and Burger King and those kind of places. These insurance companies, somehow, again, that's their side. I don't' really know how that works, but somehow, they're large enough to be able to take those kind of policies or the ones I was seeking quotes from, like Liberty Mutual, places like that, didn't want to have anything to do with carrying that kind of business.

Q.     What kind of coverages were you trying to get from Liberty Mutual and the other insurers?

A.     Property and GL.

Q.     Did they ever give you a quote?

A.     No.

     . . . .

Q.     I thought with the other insurers that you did not submit an application to, the reason you didn't submit an application is because they told you, we can't get a program for you?

A.     Right.

Finally, Ms. Alleman explained that when she discussed the deductible provisions of the Arch policy with RMS, and what the deductible amounts were, it did not really make a difference. She acknowledged that this was true because there was no other insurance coverage available besides the Arch insurance program through McDonald's.

7

Consistent with the testimony of Ms. Alleman was that of Mr. Ajay Patel, the owner of Abnar, Inc., a franchisee. He likewise acknowledged that the franchise was required to have insurance and that the insurance which was purchased had to be through a McDonald's-approved insurance program. Mr. Patel's testimony also failed to established the existence of other available insurance. Mr. Patel testified as follows:

> Q. Why are most people with McDonald's property insurance program who are franchisees?
>
> A. We're required to based on our license agreement that we signed with McDonald's to have a certain amount of coverage, and we stay within the realm of approved insurance companies.
>
> . . . .
>
> Q. Have you ever gone uninsured?
>
> A. No.
>
> Q. If you went uninsured, would that be in violation of the franchise agreement?
>
> A. Yes.
>
> Q. Would you ever go uninsured?
>
> A. No.

The testimony of Ms. Alleman concerning the Krampe Plaintiffs and the testimony of Mr. Patel relative to Abnar were echoed by Mr. Terry Wilburn of the Wilburn Plaintiffs. Mr. Wilburn confirmed that the franchisees were required to purchase insurance and, moreover, that the policy issued by Arch was the only insurance available. When explaining the circumstances surrounding a franchisee's purchase of insurance, Mr. Wilburn testified that although they were required to obtain insurance, "there was nothing [he] could do, . . . [he] had nobody else bidding on [his] insurance, so [he] had no choice." Mr. Wilburn explained, "[w]e have got

8

to have insurance. It's not like we have a choice to pick insurance companies."

In addition to the testimony of the franchise owners, Diane Krause, an employee of RMS, testified that there was no other corporately approved insurance available.[3] Ms. Krause, explaining that it was a "very difficult" market, testified as follows: "And I will repeat. I don't believe any other McDonald corporate insurer at that time was offering the coverage to certain franchisees." Subsequently, when asked whether Arch offered the only insurance which could be obtained for this area, Ms. Krause testified: "To the best of my knowledge, the [2002 to 2003] term, Arch was the only insurance company offering quotations in some of the, quote, high hazard wind territories." According to Ms. Krause, Arch was offering coverage in some areas "that none of the other carriers were offering coverage in"; therefore, she was "thankful [she] was getting the coverage at all."

In an effort to defeat the motion for summary judgment, the franchisees point to the testimony of Larry Andrews, the account executive with Wright & Percy who handled the accounts at issue. They assert that, according to Mr. Andrews, "the market for the McDonald's insurance program in 2002 was not a difficult market." The franchisees further assert that Mr. Andrews established that there were "five players out there, and constantly those other four players were quoting business in our areas also." Thus, the franchisees contend that the market was in fact competitive and that other insurance could have been obtained with a more favorable deductible. We disagree.

The testimony of Mr. Andrews on the availability, *vel non*, of other approved

_____

[3]The franchisees raise the issue of whether this testimony by Ms. Krause was inadmissable hearsay testimony. However, there was no objection made in the trial court. Having failed to do so, the franchisees did not properly preserve this objection for appeal, and there is nothing for this court to review. *Ratcliff v. Normand*, 01-1658 (La.App. 3 Cir. 6/5/02), 819 So.2d 434.

insurance coverage was not inconsistent with that discussed above. To the contrary, Mr. Andrews made it clear that only McDonald's-approved insurance companies can issue coverage to the franchisees. Additionally, although Mr. Andrews did discuss the concept of "buying back wind[,]" in this context, he was referring generally to commercial accounts. The testimony of Mr. Andrews failed to establish that corporately approved insurance, which was more favorable to that provided by the Arch policy, was available to the franchisees at the relevant time period. As correctly stated by the trial court, the franchisees failed to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial as to the key element of causation as required by La.Code Civ.P. art. 966. Consequently, Defendants, RMS and Liberty, are entitled to summary judgment.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against MacLaff, Inc., University Partnership, Ambassador Partnership, Abnar, Inc., Wilburn Enterprises, L.L.C., and Terry Wilburn d/b/a Cat Enterprises .

**AFFIRMED.**